[No. F026821. Fifth Dist. June 2, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
ALAN MICHAEL SHAW, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 1.A., 2. and 3. of the Discussion.

494

**COUNSEL**

Karen Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Venturi and Nanette Winaker, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THAXTER, J.**—Appellant Alan Michael Shaw withdrew his previous plea of not guilty and pleaded no contest to 41 felony counts of cruelty to horses, in violation of Penal Code[1] section 597, subdivision (b), and 1 misdemeanor count of failing to properly care for animals, in violation of section 597f.

Before being sentenced, appellant filed a motion to withdraw his no contest plea. The court denied the motion, suspended imposition of sentence, and placed appellant on formal probation for six years. The court ordered appellant to serve 1 year in custody, with 45 days to be served in jail and the balance of 320 days on electronic monitoring. A restitution fine of $200 was imposed under section 1202.4, subdivision (b). Pursuant to section 1202.4, subdivision (f), appellant was ordered to pay full restitution in an amount to be determined subsequent to a forfeiture hearing.

At appellant's request the trial court issued a certificate of probable cause. Appellant contends the trial court erroneously denied his motion to withdraw his plea. He further argues the court erred in denying him conduct credits for custodial time served in an electronic monitoring program and in ordering victim restitution without specifying the amount thereof. We will reject all of appellant's contentions and affirm the judgment.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

FACTS[2]

Appellant and his codefendant, Jennifer Washburn Shaw, were married at one time and lived together on a 60-acre ranch in Twin Oaks, east of Bakersfield. A number of horses were pastured and cared for on the property by appellant and his wife.

The Kern County Health Department Animal Control Services made contact with appellant and Jennifer Shaw regarding the condition of their horses, once in 1990 and again in 1993. On February 3, 1995, Beth Guerrero, an animal control officer, contacted Alan Shaw in person after receiving a report numerous horses were observed to be in poor physical condition, underweight, and in need of farrier services. Alan Shaw refused to talk to Guerrero and asked Guerrero to contact his wife. Before leaving the property, Guerrero confirmed the condition of the horses matched the report she had received.

On February 22, 1995, Jennifer Shaw met with animal control officers at the Shaw residence. At that time, officers saw 65 to 70 horses, many appearing underweight and in need of hoof care and worming. The officers explained basic care instructions to the Shaws and advised them they would contact them again within two weeks.

On March 23, 1995, the coordinator of animal control services for Kern County sent the Shaws a letter giving them 60 days to improve the condition of the horses. In September 1995, after numerous contacts between the parties and reports regarding the undernourished and unsupervised horses, the sheriff's deputies and animal control officers executed a search warrant at the Shaw property. The horses were seized and subsequently cared for by the Kern County authorities.

DISCUSSION

1. *The trial court did not err in denying appellant's motion to withdraw his no contest plea.*

 Prior to judgment and sentencing, the court heard and denied appellant's motion to withdraw his no contest plea. Appellant now contends the trial court erroneously denied the motion.

 When a defendant is represented by counsel, the grant or denial of an application to withdraw a plea is purely within the discretion of the trial

---

[2]Because this appeal follows a plea of no contest, the facts are summarized from the probation officer's report. The statement of facts is brief as the appeal concerns issues relating only to appellant's change of plea and sentencing.

court after consideration of all factors necessary to bring about a just result. (*People* v. *Harvey* (1984) 151 Cal.App.3d 660, 666-667 [198 Cal.Rptr. 858]; *People* v. *Urfer* (1979) 94 Cal.App.3d 887, 891-892 [156 Cal.Rptr. 682]; *People* v. *Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250].) On appeal, the trial court's decision will be upheld unless there is a clear showing of abuse of discretion. (*People* v. *Harvey, supra*, at pp. 666-667; *People* v. *Urfer, supra*, at pp. 891-892; *In re Brown* (1973) 9 Cal.3d 679, 685 [108 Cal.Rptr. 801, 511 P.2d 1153].) An abuse of discretion is found if the court exercises discretion in an arbitrary, capricious or patently absurd manner resulting in a manifest miscarriage of justice. (*People* v. *Jordan* (1986) 42 Cal.3d 308, 316 [228 Cal.Rptr. 197, 721 P.2d 79].)

Section 1018 requires a showing of good cause to allow withdrawal of a plea. (*People* v. *Cruz, supra*, 12 Cal.3d at p. 566.) In relevant part, section 1018 provides, "On application of the defendant at any time before judgment . . . the court may, and in case of a defendant who appeared without counsel at the time of the plea the court shall, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."

" 'While . . . section [1018] is to be liberally construed and a plea of guilty may be withdrawn for mistake, ignorance, or inadvertence or any other factor overreaching defendant's free and clear judgment, the facts of such grounds must be established by clear and convincing evidence. [Citations.]' " (*People* v. *Urfer, supra*, 94 Cal.App.3d at pp. 891-892.) The burden is on the defendant to present clear and convincing evidence the ends of justice would be subserved by permitting a change of plea to not guilty. (*People* v. *Beck* (1961) 188 Cal.App.2d 549, 553 [10 Cal.Rptr. 396].)

A. *Violation of the Plea Agreement by the Prosecution**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Applicability of Section 1016.5*

 A second contention by appellant is that the court should have advised him, as required by section 1016.5, that his plea could result in deportation.[3] Section 1016.5 provides, in relevant part:

"(a) Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as

---

*See footnote, *ante*, page 492.

[3]Although the clerk's transcript reflects a section 1016.5 advisement, the reporter's transcript does not. Respondent acknowledges the trial court's failure to so advise, as did the court.

infractions under state law, the court shall administer the following advisement on the record to the defendant:

"If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." The purpose of the advisement is set out in subdivision (d) of section 1016.5: "The Legislature finds and declares that in many instances involving an individual who is not a citizen of the United States charged with an offense punishable as a crime under state law, a plea of guilty or nolo contendere is entered without the defendant knowing that a conviction of such offense is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Therefore, it is the intent of the Legislature in enacting this section to promote fairness to such accused individuals by requiring in such cases that acceptance of a guilty plea or plea of nolo contendere be preceded by an appropriate warning of the special consequences for such a defendant which may result from the plea. It is also the intent of the Legislature that the court in such cases shall grant the defendant a reasonable amount of time to negotiate with the prosecuting agency in the event the defendant or the defendant's counsel was unaware of the possibility of deportation . . . ."

A declaration attached to appellant's motion to withdraw his plea stated he was a Canadian citizen who had been in the United States as a legal resident since the age of two. He argues that because no advisement was made under section 1016.5, he need only show he was unaware of a possible consequence of the plea, and had he been aware, he would not have entered the plea. (*People* v. *Castaneda* (1995) 37 Cal.App.4th 1612, 1619, 1621 [44 Cal.Rptr.2d 666].) Appellant claims the trial court's conclusion that he was required to additionally "make a showing the conviction may have the consequences for the defendant for deportation" was error.

Subdivision (b) of section 1016.5 states in pertinent part: "(b) . . . If, after January 1, 1978, the court fails to advise the defendant as required by this section *and the defendant shows that conviction of the offense to which the defendant pleaded guilty or nolo contendere may have* the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement." (Italics added.)

The issue raised by appellant's contention is whether a defendant who shows he is a noncitizen has made the showing required by section 1016.5, subdivision (b). We are unaware of any published California decision directly addressing this issue.

Our research reveals only two published cases (*People* v. *Gontiz* (1997) 58 Cal.App.4th 1309 [68 Cal.Rptr.2d 786] and *People* v. *Guzman* (1981) 116 Cal.App.3d 186 [172 Cal.Rptr. 34]) in which a defendant obtained relief because of the trial court's failure to give the advisement required by section 1016.5. Appellant relies heavily on *Gontiz*, which was decided after the hearing on his motion below. Neither it nor *Guzman*, however, supports appellant's position.

In *People* v. *Gontiz, supra*, 58 Cal.App.4th 1309, the defendant moved to vacate his guilty pleas in two separate cases on the ground that when he entered the pleas, he was not advised of all possible immigration consequences pursuant to section 1016.5. The court had advised the defendant of the possibility of deportation and denial of citizenship, but not that he could be "excluded" from the United States. The Court of Appeal agreed that the mandatory language of section 1016.5, subdivision (b) compelled vacation of the judgment absent a proper advisement. (*People* v. *Gontiz, supra*, 58 Cal.App.4th at pp. 1317-1319.)

What distinguishes *Gontiz* from this case is that in *Gontiz* the Immigration and Naturalization Service had instituted permanent deportation charges against the defendant. (*People* v. *Gontiz, supra*, 58 Cal.App.4th at p. 1312.) Thus, there could be no doubt that the defendant was one whose pleas "may have the consequences" of deportation as provided in section 1016.5, subdivision (b). The appellate court did not discuss what type of showing was required of the defendant, as that was not in issue. The court did, however, acknowledge the requirement of subdivision (b). In its introductory comment about section 1016.5, the *Gontiz* court stated, "[T]he Legislature has enacted an unusual statutory remedy which provides for mandatory vacation of judgment where the trial court has failed to give advisement about immigration consequences, *limited only by the requirement that the movant be in danger of suffering those consequences.*" (58 Cal.App.4th at p. 1311, italics added.) The court later stated, "Except for having to show that his conviction may result in immigration consequences, subdivision (b) does not require the defendant to make any other showing." (*Id.* at p. 1317.)

*People* v. *Guzman, supra*, 116 Cal.App.3d 186, is similarly distinguishable. There the court reversed and remanded with directions to allow the defendant the opportunity to withdraw his guilty plea since he had not been

given the advisement required by section 1016.5. The court's holding was that "where there is a sufficient showing on the record from the words of the court itself, that the defendant was in this country unlawfully, was not only subject to deportation, but would be deported when he was released from custody, and the court below did not give the mandatory advisement required by . . . section 1016.5, subdivision (a)," the defendant must be given an opportunity to withdraw his plea. (116 Cal.App.3d at p. 192.) The record in that case reflected that the trial court knew of and expressly commented on the defendant's illegal alien status, his prior deportation and reentry, and his likelihood of being deported again because of his current offenses (lewd and lascivious act on a child under 14 and assault with a deadly weapon). (*Id.* at p. 188.) Thus, although *Guzman* did not involve a motion to vacate, sufficient information was already before the court to satisfy the showing required under section 1016.5, subdivision (b).

Here, at the motion to withdraw his plea, appellant offered no evidence he was subject to deportation, exclusion, or denial of naturalization as a result of his plea. Aside from declaring he was a Canadian citizen and had been a legal resident since the age of two (appellant was currently forty-five), he offered no evidence he was in a class of deportable aliens. Pursuant to 8 United States Code section 1227(a)(2)(i), "Any alien who . . . [¶] . . . is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and [¶] . . . is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable." Appellant offered neither evidence that the crime was committed within five years after the date of his entry nor evidence that the crime involved "moral turpitude."

From the showing made by appellant, the trial court could only speculate whether his plea may have immigration or naturalization consequences. The court refused to indulge in such speculation, stating, "you are going to have to make some showing in that regard." The court further observed, "I think by fathering two children in the United States and having been here since age two, I can't conceivably imagine likelihood [appellant] would be deported or that he may face deportation."

We agree with the trial court. While the statute does not require the defendant to show that immigration consequences *will* result from his plea, its reasonable interpretation implies the need to show more than just a remote possibility of deportation, exclusion, or denial of naturalization. If carried to its logical extreme, appellant's argument would require the court, on mere proof of noncitizenship, to vacate judgment and allow withdrawal

of a plea even if the prosecution were able to establish that the conviction was not grounds for adverse immigration action. Such a result does not square with the legislative intent expressed in section 1016.5, subdivision (d).

In addition, section 1018, under which appellant's motion was brought, requires the facts of the asserted grounds be established by clear and convincing evidence. (*People* v. *Urfer, supra*, 94 Cal.App.3d at pp. 891-892.) Speculation based solely on appellant's noncitizenship status does not meet the clear and convincing test.

Appellant's final argument on this issue is that if a defendant must make a showing of possible adverse immigration consequences, he, in essence, is required to present evidence against himself, making the case for immigration. We disagree. ■ First, as explained in *People* v. *Aguilera* (1984) 162 Cal.App.3d 128 [208 Cal.Rptr. 418], although subdivision (d) of section 1016.5 states "that at the time of the plea no defendant shall be required to disclose his or her legal status to the court," subdivision (d) applies only at the time of the plea, and not when a motion is made to vacate the plea. "A defendant, therefore, wishing to vacate a plea per subdivision (b) may of necessity have to reveal his or her alien status." (162 Cal.App.3d at pp. 131-132.)

As also noted in *People* v. *Aguilera*, "Since the Legislature did not want to compel defendants to disclose their legal status to the court at the time of entering their pleas, courts should consider conducting subdivision (b) hearings so that defendants receive the same kind of protection the Legislature wished them to have at the time they enter their pleas. An *in camera* hearing, for example, and the sealing of the transcript would accomplish this goal." (162 Cal.App.3d at p. 133, fn. 2.) This footnote was noted by the court below and discussed with appellant's counsel. Counsel did not request such protection for appellant.

■ We thus hold that appellant's proof of noncitizenship, without more, was insufficient to satisfy his burden under section 1016.5, subdivision (b).

2., 3*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 492.

## DISPOSITION

Judgment affirmed.

Stone (W. A.), Acting P. J., and Buckley, J., concurred.

A petition for a rehearing was denied June 22, 1998, and appellant's petition for review by the Supreme Court was denied September 2, 1998. Kennard, J., was of the opinion that the petition should be granted.