Filed 1/28/25  P. v. Close CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C100411 |
| Plaintiff and Respondent, | (Super. Ct. No. 22F0375) |
| v. | |
| BRENT RAY CLOSE, | |
| Defendant and Appellant. | |

Defendant Brent Ray Close appeals from the trial court's denial of his motion to withdraw his no contest plea.  Defendant claims he should be allowed withdraw his plea because clear and convincing evidence demonstrates defense counsel overcame defendant's free judgment by refusing to allow him to enter a plea of not guilty by reason of insanity and failing to consult with a mental health expert regarding potential mental health related defenses.  We conclude defendant has not met his burden to demonstrate error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant fatally stabbed K.W. six times at a restaurant. He fled through an alley and was arrested by Redding police the next day. During his interview with police, defendant admitted he was at the restaurant during the incident, stabbed K.W., and discarded the knife he used to kill K.W. while he fled.

An information charged defendant with murder (Pen. Code, § 187, subd. (a)),[1] assault with a deadly weapon (§ 245, subd. (a)(1)), and robbery (§ 211). It also alleged defendant suffered two prior strikes (§ 1170.12), personally used a deadly weapon (§ 12022, subd. (b)(2)), and inflicted great bodily injury on the assault victim (§ 12022.7).

Defendant initially pled not guilty to all charges. At that time, counsel expressed doubt about defendant's competence to stand trial. The court suspended the proceedings pursuant to section 1368 and ordered an evaluation of defendant's competency to stand trial. The parties agreed to submit the issue to the court based on written evaluations of three court-appointed doctors, without presenting additional evidence. The parties stipulated to the findings in two of the three reports, which found defendant competent to stand trial. The court found defendant competent to stand trial.

Defendant subsequently pled no contest to murder and admitted a prior strike conviction; in exchange the court sentenced him to 50 years to life and dismissed all other charges, including a misdemeanor case that is not subject to this appeal. During the plea colloquy the court asked defendant if he discussed potential defenses that might have been available to him with his defense counsel, and defendant confirmed he had. The court accepted the plea.

---

[1] Undesignated statutory references are to the Penal Code.

*Marsden*[2] *Motion*

Prior to sentencing in May 2023, defendant moved the trial court to relieve his defense counsel. Defendant argued his counsel was ineffective because defendant had a "serious mental illness," defendant had "no intent [or] no malice" when he committed the underlying offense, and defense counsel would not listen to him. The court asked defendant how his mental health issues related to defense counsel's representation. Defendant said that counsel initially told him that he was not competent to stand trial. Defendant also asserted that counsel indicated he could not work with defendant. Defendant argued that defense counsel did not provide any information to the court about his mental health history and that the trial court relied on only the three doctors' reports to make its finding that defendant was competent to stand trial.

The court attempted to clarify the issue, asking defendant if he was trying to say that there was something about his mental health history that his defense counsel "did not look into and [] should have looked into," as it related to his defense. Defendant responded that he had a mental illness for years, he believed the three court-appointed doctors thought he was faking his condition, and that he was getting no guidance from his counsel.

Defense counsel said he initially had some doubt about defendant's competence to stand trial. The trial court asked defense counsel if there were any defenses related to defendant's mental state, health, or disability that "might have amounted to a defense" at the time of the underlying conduct. Counsel said that based on his review of defendant's medical records, prior cases where defendant was evaluated for competency, and the three evaluations done in the underlying case, he did not believe there were any defenses available to defendant.

---

[2]     *People v. Marsden* (1970) 2 Cal.3d 118.

Defendant told the court that prior to the current case, he had been institutionalized for mental health reasons and was previously diagnosed with bipolar with manic and psychotic features sometime before 2017 or 2018.  He further claimed that a mental health condition provided a defense as to "intent and malice aforethought," but did not provide further detail.

The court then asked defense counsel what conversations he had with defendant regarding possible defenses related to defendant's mental health in mitigation of the mental state required for murder.  Counsel indicated he had extensive conversations with defendant from the outset of the case and that defendant was adamant that he wanted to be deemed incompetent.  Based on these conversations and reviewing the evidence with defendant, counsel concluded "there was really not much mitigating defense as far as mental state."

Defense counsel specifically mentioned a conversation in which defendant "attempted to put forth" a not guilty by reason of insanity plea, but counsel advised defendant that he believed defendant had no grounds to withdraw his plea.  Counsel based his opinion on defendant's statements, video evidence of him throwing a knife as he fled, the fact that defendant later led police to the location of the murder weapon, the police report, and defendant's confession to law enforcement.  Counsel explained his position to defendant and then reviewed the plea offer with defendant.

After explaining the plea offer, counsel indicated to defendant that under the offer, defendant would be eligible for elder parole after 25 years and that it was in his best interests to consider the offer.  He said after considering the offer defendant agreed to enter into the plea agreement.  Counsel further said the court "conducted an extensive voir dire" of defendant regarding the plea and required counsel to explain additional issues to defendant prior to defendant entering the plea.  Based on his interactions with defendant, counsel believed defendant understood the ramifications of entering the plea.

Counsel acknowledged that defendant stated he did not want to plead no contest, but that defendant only raised the issue after entering the plea.

Defense counsel told the court he did not find sufficient information that would have caused him to consider having a mental health professional evaluate defendant regarding a potential plea of guilty by reason of insanity or a mitigating defense based on a mental health condition. In reaching this conclusion, defense counsel relied on defendant's "extensive . . . criminal history" dating back to 1986, information contained in the probation report, prior cases where defendant requested diversion, and his consultation with another defense attorney that had previously represented defendant on similar issues in which he discussed possible defenses based on mental health. The trial court took the matter under consideration and held a further *Marsden* proceeding a week later.

At the subsequent *Marsden* proceeding, the trial court asked defense counsel whether he believed the three medical evaluations expressed any specific opinions regarding a mental health defense or if the evaluations only evaluated defendant's competence to stand trial. Counsel responded that the evaluations showed that defendant was "using his mental health as a pseudo defense," that the defendant was competent to stand trial, and that defendant "knew what he was doing at the time of the incident." Counsel conceded, however, that none of the evaluating doctors were asked to assess whether a mental health related defense would be appropriate to pursue. Counsel also asserted that his decision not to independently pursue a mental health defense was based on the totality of the circumstances, not solely the medical examinations.

The court, while not faulting defense counsel for failing to seek an outside medical opinion regarding potential mental health related defenses, granted defendant's motion so another attorney could "look into" the mental health related defense issue. It also told defendant that being appointed a new attorney "doesn't mean that that attorney is going

5

to do what you want," but that the new attorney would look into the possibility of a mental health related defense. The next day, the court appointed a new defense counsel.

*Motion to Withdraw the Plea*

In June 2023, the court continued the matter until September to hear defendant's pending motion to withdraw his plea. The court further continued the hearing until December 2023. On the day of the scheduled hearing, defense counsel filed defendant's motion to withdraw his plea. Defendant argued that he was denied his right to effective assistance of counsel and due process when his defense counsel failed to allow him to change his plea from "Not Guilty" to "Not Guilty by Reason of Insanity" during the plea bargaining process. The motion did not have an accompanying declaration and defense counsel did not file the motion with an order to shorten time. The trial court noted the motion contained "essentially no evidentiary support."

The trial court asked if a doctor had been retained to investigate the underlying reasons for the motion. Defense counsel said he obtained approval to retain a doctor in September, engaged with the doctor in October, and maintained "fairly consistent communication" since that time "given the issues in this case." However, the doctor had not yet conducted an examination. Defense counsel conceded that he did not presently have any evidence to support defendant's assertion he suffered from a defense-related "underlying mental condition or disorder." The prosecution argued the court should deny the motion because defendant had nearly seven months to retain a doctor and file the motion to withdraw the plea, the motion was untimely, and it was not supported by evidence. The trial court denied the motion finding it was not timely and had no evidentiary support, and sentenced defendant to 50 years to life pursuant to the plea agreement.

Defendant obtained a certificate of probable cause.

6

DISCUSSION

Defendant argues that the trial court abused its discretion in denying his motion to withdraw the plea because clear and convincing evidence demonstrates defense counsel overcame defendant's free judgment by refusing to allow him to enter a plea of not guilty by reason of insanity and not first consulting with a mental health expert regarding potential mental health related defenses. The People argue the trial court properly denied defendant's motion. The People also argue defendant forfeited his second claim that counsel was ineffective for not consulting with a mental health expert. Defendant replies that his claim is not forfeited and argues the first defense counsel failed to pursue leads about mental health defenses regarding the issues of intent, malice, and premeditation. We conclude defendant has not met his burden to demonstrate any error.

*Forfeiture*

The People argue defendant forfeited his claim that defense counsel rendered deficient performance because he advised defendant of his legal opinion that defendant did not have a mental health related defense without first consulting a mental health expert. Defendant's motion to withdraw his plea generally alleged he was denied the right to effective assistance of counsel. The trial court also specifically granted defendant's *Marsden* motion so that defendant could further develop any potential mental health related defenses. Defendant's motion need not be formalistic. (*People v. Partida* (2005) 37 Cal.4th 428, 434.) It fairly informed the court and the prosecution of defendant's reason why he should be allowed to withdraw his plea. (*Id.* at p. 435.) Defendant did not forfeit this claim.

*Abuse of Discretion*

Under section 1018, upon a defendant's motion prior to judgment, the court may for a good cause shown, permit the no contest plea to be withdrawn. (§§ 1018, 1016 ["a plea of nolo contendere shall be considered the same as a plea of guilty and that, upon a plea of nolo contendere, the court shall find the defendant guilty"].) " 'Mistake,

7

ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a [no contest] plea' under section 1018 [citation], and section 1018 states that its provisions 'shall be liberally construed . . . to promote justice.' " (*People v. Patterson* (2017) 2 Cal.5th 885, 894.) However, this "liberality . . . is to be applied in determining whether the established facts constitute the good cause required by the statute. It does not relieve the applicant from coming forward with requisite proof that the ends of justice will be subserved by permitting him to change his plea from guilty to not guilty. [Citation.]" (*People v. Brotherton* (1966) 239 Cal.App.2d 195, 201.) A defendant must present clear and convincing evidence to withdraw a no contest plea. (§ 1018; *People v. Breslin* (2012) 205 Cal.App.4th 1409, 1415-1416.) No contest pleas "should not be set aside lightly and finality of proceedings should be encouraged." (*People v. Weaver* (2004) 118 Cal.App.4th 131, 146.)

We review the trial court's decision on a motion to withdraw a plea for abuse of discretion. (*People v. Patterson, supra*, 2 Cal.5th at p. 894; *People v. Lopez* (2021) 66 Cal.App.5th 561, 574.) "We accept the trial court's factual findings to the extent they are supported by substantial evidence." (*Ibid*.) Such a decision cannot be reversed unless the trial court exercised such discretion in an "arbitrary, capricious or patently absurd manner resulting in a manifest miscarriage of justice." (*People v. Shaw* (1998) 64 Cal.App.4th 492, 496.)

"Generally, defense counsel has the right to make tactical choices regarding formulation and presentation of a defense at trial. [Citation.] However, as [our] California Supreme Court has explained, 'the decision to plead guilty or not guilty ultimately lies with the defendant.' " (*People v. Henning* (2009) 178 Cal.App.4th 388, 397.) Defendant has the right to enter a plea even if it may be harmful to his case. (*Id*. at p. 398.) "To this end, section 1018 provides: 'Unless otherwise provided by law, every plea shall be entered or withdrawn by the defendant himself or herself in open court.' " (*Henning*, at p. 397.)

8

Defendant may have unequivocally asked the trial court to "take the plea back" at the *Marsden* hearing so that he could have time to develop a mental health related defense and that includes a plea of not guilty by reason of insanity. However, to withdraw his plea under section 1018, defendant was still required to demonstrate, by clear and convincing evidence, his counsel overcame his free will and judgment. (*People v. Patterson, supra*, 2 Cal.5th at p. 894.) We conclude defendant did not meet this burden.

Contrary to defendant's claim, the record does not indicate that counsel refused to allow defendant to plead not guilty by reason of insanity or overcame defendant's free will and judgment. Defendant made his interest in pleading not guilty by reason of insanity clear from the outset of the case, and counsel had extensive discussions with defendant about that issue. Counsel said he explained to defendant that it was his legal opinion that defendant did not meet the criteria for a successful not guilty by reason of insanity plea.

Counsel based his opinion on his review of defendant's medical records; criminal history, including prior cases where other courts held competency hearings or defendant requested diversion; the probation report; and the three competency evaluations done in the underlying case. Defense counsel also consulted with another attorney who previously represented defendant regarding very similar issues. Counsel indicated that the medical examinations ordered under section 1368 stated defendant was competent to stand trial and understood the nature of his acts at the time he committed the underlying offense. (§ 25, subd. (b); *People v. Skinner* (1985) 39 Cal.3d 765, 776-777.) Defendant has not pointed to any evidence that counsel overcame his free will or that any mental health related defense was available to him at the time he entered the plea.

Rather, the record shows defendant knowingly and willingly entered the plea. Defendant and counsel had extensive discussions about the plea and the lack of evidence supporting a not guilty by reason of insanity plea, and defendant confirmed he and

9

counsel discussed possible available defenses prior to entering into the plea agreement. The trial court also conducted an extensive voir dire of defendant before taking the plea.

Defendant insinuates that the granting of the *Marsden* motion necessarily meant his counsel was deficient, which provided a basis to withdraw his plea. Not so, and subsequent counsel conceded he had no evidence to support a plea of not guilty by reason of insanity.

When the trial court granted defendant's *Marsden* motion it said it did not fault defense counsel, and impliedly granted the motion based on irreconcilable difference between defendant and his counsel. (*People v. Jones* (2003) 29 Cal.4th 1229, 1244-1245 ["A defendant is entitled to have appointed counsel discharged upon a showing that counsel is not providing adequate representation or that counsel and defendant have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result."].) There is nothing in the record indicating the court found counsel provided ineffective assistance of counsel. The court also expressly indicated to defendant after granting the *Marsden* motion that newly appointed defense counsel would merely further investigate whether there was possibly an applicable mental health related defense. Defendant's second counsel was not able to obtain any evidence in support of defendant's motion after seven months of representation.

Moreover, the record affirmatively demonstrates the lack of evidence on which to base an insanity defense. Nothing in the record indicates defendant suffered from any condition that would render him unable to appreciate the wrongfulness of the underlying conduct at the time he committed the crimes. However, defendant's admissions to police that he was at the restaurant during the incident, stabbed K.W., and discarded the knife he used to kill K.W. while he fled indicate intentional strategic thinking and that defendant understood the wrongfulness of his conduct. (*People v. Henning, supra*, 178 Cal.App.4th at p. 401.)

10

Despite defendant's subsequent counsel having previous experience representing defendant, being familiar with defendant's criminal history, and retaining a doctor for over two months, counsel conceded that no examination had been conducted. He also conceded that he had no evidence of an underlying mental health condition that would support a defense to murder. Defendant has not met his burden to demonstrate that clear and convincing evidence provided good cause for his motion to withdraw the plea because, despite being afforded the opportunity, neither of his counsel could produce any evidence that defendant suffered from a mental health condition that would provide a defense in the underlying case. The record shows that an insanity defense would have been futile. (*People v. Henning, supra*, 178 Cal.App.4th at p. 402.) The trial court did not abuse its discretion.

## DISPOSITION

The judgment is affirmed.

\_\_\_\_\_/s/_____
MESIWALA, J.

We concur:

\_\_\_\_\_/s/_____
ROBIE, Acting P. J.

\_\_\_\_\_/s/_____
MAURO, J.